IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | No. C-09-4087 EDL |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO TRANSFER** |
| v. | |
| JANE LUBCHENCO, et al. | |
| Defendants. | |

In this civil action for declaratory and injunctive relief, Plaintiffs Center for Biological Diversity ("Center") and Greenpeace allege that Defendants Jane Lubchenco, Administrator of the National Oceanic and Atmospheric Administration, Gary Locke, United States Secretary of Commerce, and the National Marine Fisheries Service ("NMFS") violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, et. seq., by failing to list the ribbon seal as threatened or endangered. See Compl. ¶ 1; see also Endangered and Threatened Wildlife; Notice of 12-Month Finding on a Petition to List the Ribbon Seal as a Threatened or Endangered Species, 73 Fed. Reg. 79822 (Dec. 30, 2008). Plaintiffs allege that NMFS used an improperly truncated time frame of forty-three years as the "foreseeable future" when determining that the ribbon seals' sea-ice habitat was "expected to continue forming annually in winter for the foreseeable future," failed to consider whether there might be a distinct population segment of ribbon seals that should be listed, and failed to consider whether ribbon seals might be threatened or endangered in a "significant portion" of their range.

On October 13, 2009, Defendants filed a Motion to Transfer this matter to the District of

1 Alaska pursuant to 28 U.S.C. § 1404(a).  The motion was fully briefed, and the Court held a hearing
2 on November 17, 2009.  For the reasons stated at the hearing and in this Order, Defendants' Motion
3 to Transfer is denied.

**Background**

Plaintiff Center for Biological Diversity is a non-profit corporation incorporated in New Mexico with over 43,000 members nationwide, over 9,800 of whom reside in California, and over 3,700 of whom reside in the Northern District of California.  See Declaration of Shaye Wolf at ¶ 3. The Center is registered to do business in California, and maintains a San Francisco office that is its California headquarters.  See id. at ¶¶ 4, 6.  The Center runs its climate and ocean protection efforts out of California.  See id. at ¶¶ 6-9.  The Center researched and drafted the ribbon seal listing petition in San Francisco and continues to coordinate its efforts related to seeking protection for the seal from that office.  See id. at ¶¶ 7-9.

Plaintiff Greenpeace is a California non-profit corporation with its main California office in San Francisco.  See Declaration of Thomas Wetterer at ¶ 3.  Greenpeace has approximately 250,000 members who reside in the United States, over 60,000 of whom reside in California, many in San Francisco.  See id. at ¶ 4.  Global warming is the ongoing priority campaign for Greenpeace.  See id. at ¶ 5.  Greenpeace has campaigned on the causes and impacts of climate change in the Arctic, including the impacts on species such as the ribbon seal.  See id.

The ribbon seal is one of several seals of the Arctic and sub-Arctic region that is completely dependent on sea ice for its survival.  See Pls.' Opp. to Defs.' Mot. to Transfer at 2.  Ribbon seals rely on the loose pack ice of the sea-ice front of the Bering and Okhotsk Seas of Russia and Alaska from the late winter through the early summer for giving birth, nursing their pups and molting.  See id.  Plaintiffs argue that the ribbon seal population faces likely global extinction in the wild by the end of this century primarily due to global warming, which is resulting in the rapid melt of its sea-ice habitat.  See id. at 2-3.  Plaintiffs also argue that the ribbon seal population faces the additional threat of overexploitation due to the high harvest levels allowed by Russia, as well as threats from oil and gas development in the region, rising contaminant levels in the Arctic, and bycatch mortality and competition for prey resources from commercial fisheries.  See id. at 3.

2

1  ESA provides "a means whereby the ecosystems upon which endangered species and
2  threatened species depend may be conserved" and "a program for the conservation of such
3  endangered species and threatened species." 16 U.S.C. § 1531(b). Within ninety days of the filing
4  of a petition under ESA, NMFS determines whether the petition presents substantial information
5  indicating that the petitioned action may be warranted. 16 U.S.C. § 1533(b)(3)(A). If the petition
6  presents substantial information, NMFS must commence a status review of the species. See id.
7  Within twelve months after receiving a petition that presents substantial information, NMFS must
8  make a finding ("12-month finding") either that the petitioned action is not warranted, or that the
9  action is warranted and the proposed regulation is promptly published, or that the action is warranted
10 but further regulatory action is precluded by work on higher priority actions. See 16 U.S.C. §
11 (b)(3)(B).

12  On December 20, 2007, the Center filed a petition with the NMFS requesting the listing of
13 the ribbon seal as a threatened or endangered species under ESA. See Wolf Decl. ¶ 7; see also 16
14 U.S.C. § 1533(b)(3). The Center's petition was researched in, drafted in and sent to NMFS from
15 San Francisco. See Wolf Decl. ¶ 7. On March 28, 2008, NMFS announced its finding that the
16 petition presented substantial information that the ribbon seal might warrant listing and initiated a
17 comment period and status review. See Endangered and Threatened Wildlife; Notice of 90-Day
18 Finding on a Petition to List the Ribbon Seal as a Threatened or Endangered Species, 73 Fed. Reg.
19 16617 (Mar. 28, 2008). On May 22, 2008, the Center submitted comments regarding the status
20 review from San Francisco. See Wolf Decl. at ¶ 8. On December 30, 2008, NMFS issued its 12-
21 month determination that the ribbon seal should not be listed under ESA. See Endangered and
22 Threatened Wildlife; Notice of 12-Month Finding on a Petition to List the Ribbon Seal as a
23 Threatened or Endangered Species, 73 Fed. Reg. 79822 (Dec. 30, 2008). The 12-month finding was
24 prepared by NMFS's Alaska Regional Office, which is located in Juneau, and Defendants state that
25 it was signed by an official in Maryland. See id. at 79,823, 79,828. The 12-month finding indicates
26 that NMFS's files on the ribbon seal determination are available at the Juneau office. See id. at
27 79,823.
28  On March 31, 2009, the Center and Greenpeace sent a notice letter to NMFS regarding

3

alleged flaws in the agency's finding.  See Wolf Decl. ¶ 9.  On September 3, 2009, Plaintiffs filed this action, having received no response to their March 2009 notice letter.

**Legal Standard**

Although there is no dispute that venue is proper in this district, Defendants move to transfer this case to the District of Alaska pursuant to 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Under this statute, whether an action should be transferred involves a two-step inquiry.  The transferor court must first determine whether the action "might have been brought" in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness."  Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (Judge Patel) (citing Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir.1985); Jones v. GNC Franchising, 211 F.3d 495, 498 (9th Cir. 2000)).  The burden is on Defendants to show that transfer is needed.  See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

Here, there is no dispute that the first prong of the § 1404(a) analysis is met.  This action might have been brought under 28 U.S.C. § 1391(e) in the District of Alaska because a substantial part of the alleged events and omissions occurred in the District of Alaska.  See 28 U.S.C. § 1391(e) ("A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.").

The second prong of the § 1404(a) analysis requires the Court to consider the three factors set forth in the statute: (1) the convenience of parties; (2) the convenience of witnesses; and (3) the interests of justice.  Courts also weigh the plaintiff's choice of forum.  See Securities Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir.1985).  Relevant factors the Court may consider include:

4

1  (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

Gerin v. Aegon USA, Inc., No. C 06-5407, 2007 WL 1033472, at *4 (N.D. Cal., April 4, 2007) (citing Jones v. GNC Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000)).

**Discussion**

Many of the factors in the transfer analysis are not relevant to this environmental case. There are no witnesses to consider since this case will be decided on the record on summary judgment, as the parties acknowledged at the hearing and in their briefs. The documentary evidence is easily transported to any venue, in this era of electronic communication. Indeed, Plaintiffs explained at the hearing that the administrative record already exists in this district by virtue of Plaintiffs' Freedom of Information Act request. Both California and Alaska courts are equally familiar with the environmental laws at issue, and neither party has raised any consolidation issues.

There is a modest difference in the congestion of the courts' calendars that weighs slightly against transfer. See Pls.' Opp. at Ex. 4, 5. This Court has previously examined the difference in court congestion between the Northern District of California and the District of Alaska in Center for Biological Diversity v. Kempthorne, 2007 WL 2023515 (N.D. Cal. July 12, 2007). Since that time, the Northern District of California has had a shorter time to disposition, and there has been a modest increase in disparity between the median times in the two districts. Compare Pls.' Opp. at Ex. 4 (civil statistics showing the median time from filing to disposition in the Northern District of California as 7.4 months in 2006, 6.7 months in 2007 and 7.7 months in 2008), with Pls.' Ex. 5 (civil statistics showing the median time from filing to disposition in the District of Alaska as 9.2 in 2006, 9.1 in 2007 and 9.9 in 2008). As in most environmental cases, however, the issue of which federal district should adjudicate the dispute is determined primarily by weighing a plaintiff's choice of forum against the competing interest in "having localized controversies decided at home." Piper Aircraft v. Reyno, 454 U.S. 235, 241 n. 6 (1981) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)); see also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3854 (3d ed. 2007) (noting that, especially in environmental cases, "[a]n

5

1  additional reason for litigating in the forum that encompasses the locus of operative facts is the local
2  interest in having local controversies resolved at home....").

**Plaintiffs' choice of forum**

Unless the balance of the Section 1404(a) factors weighs heavily in favor of the defendants, "the plaintiff's choice of forum should rarely be disturbed." Securities Investor, 764 F.2d at 1317; see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum"). This is especially true where a plaintiff chooses to sue in its home state, as Greenpeace does here. See Ravelo Monegro v. Rosa, 211 F.3d 509, 513 (9th Cir. 2000) (referring to the "strong presumption in favor of a domestic plaintiff's forum choice."); Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc., 2006 WL 2868971, *2 (N.D. Cal. Oct. 6, 2006) (noting the strong presumption in favor of a plaintiff's choice of forum); Warfield v. Gardner, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004) (plaintiff's choice of "home forum is to be given substantial deference");.

Plaintiffs rely on Pacific Car & Foundry Co. v. Pence, 403 F.2d 949 (9th Cir. 1968) to argue that their choice of forum is entitled to substantial deference. There, the Ninth Circuit stated:

> In judging the weight to be given such a choice, as is the case with other types of actions, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection *and* that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.

Pacific Car & Foundry Co., 403 F.2d at 954 (emphasis added); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) (citing Pacific Car, 403 F.2d at 954); see also Decker Coal, 805 F.2d at 843 (affirming denial of motion to transfer because the factors relating to the plaintiff's choice of forum, convenience of the witnesses and interests of justice weighed in favor of the plaintiff). Plaintiffs argue that because this conjunctive standard is not met, their choice of forum should prevail.

Appellate decisions are controlling. Subsequent district court opinions have, however, stated the standard in the disjunctive: "The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence *or* where the forum chosen lacks a significant connection to the activities alleged in the complaint." See, e.g., Fabus Corp. v. Asiana Express Corp., 2001 WL 253185, at *1 (N.D. Cal. March 5, 2001) (emphasis

6

added); Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing Fabus, 2001 WL 253185, at *1).

Under either framework, Plaintiffs' choice of forum is entitled to deference. Using the Pacific Car formulation, Plaintiffs' choice of forum weighs heavily because California has an interest in this litigation involving Greenpeace, one of its residents. Even under the Fabus line of cases, Plaintiff's choice of forum entitled to substantial deference. Not only is Greenpeace a California resident, but California has a significant connection to the activities in this case because some of the operative events occurred here, in that the petition drafting process that triggered the status review of the ribbon seal and the 12-month finding, occurred in the Northern District of California. Therefore, Defendants need to make a strong showing of inconvenience to warrant upsetting Plaintiffs' choice.

**Local interests**

Plaintiffs rely primarily on Center for Biological Diversity v. Kempthorne, 2008 U.S. Dist. LEXIS 84978 (N.D. Cal. Oct. 10, 2008), in which Judge Wilken denied transfer to Alaska, to support their argument that local interests weigh against transfer, while Defendants contend that this case is more like this Court's decision in Center for Biological Diversity v. Kempthorne, 2007 WL 2023515 (N.D. Cal. July 12, 2007) to transfer the case to Alaska. In the 2008 Kempthorne case, the plaintiffs challenged the Fish and Wildlife Service's decision to list the polar bear as a threatened species, but nonetheless permit certain activities even though they would otherwise have been prohibited under the ESA under a special rule pursuant to ESA section 4(d). Specifically, the special rule provided that "if an activity is authorized under the Marine Mammal Protection Act and the Convention on International Trade in Endangered Species of Wild Fauna and Flora, the activity is exempt from ESA provisions that might otherwise prohibit it as a take of a polar bear." The special rule further exempted activities outside of Alaska from the incidental take provision. The special rule also exempted "activities that generate greenhouse gases, no matter where they occur, from the ESA's consultation requirements." Kempthorne, 2008 U.S. Dist. LEXIS 84978 at *4-5.

The 2008 Kempthorne case stated that even though Alaska is the only state inhabited by polar bears and the decision to classify the polar bear as a threatened species directly affects

7

primarily Alaska residents, several considerations weighed against transfer: (1) the plaintiffs' choice of forum, especially because the plaintiffs resided in the forum; (2) the interests of citizens of other states such as California in ensuring the survival of threatened and endangered species wherever they exist; and (3) the prospect that the plaintiffs' challenge to the ESA section 4(d) rule, if successful, could affect greenhouse gas emissions nationwide. See Kempthorne, 2008 U.S. Dist. LEXIS 84978, *10-11.  Other traditional factors, such as the convenience of parties and witnesses, location of documents, relative congestion of the dockets and familiarity of the courts with the relevant law, were neutral.  The court also considered that there were four related cases pending in the District of Columbia, and the Multi-District Litigation panel was considering transferring the case to the District of Columbia for pretrial purposes. See Kempthorne, 2008 U.S. Dist. LEXIS 84978 at *11.

As stated above, Defendants rely on this Court's 2007 Kempthorne decision in support of their argument that local interests favor transfer.  There, the plaintiffs challenged a decision under the Marine Mammal Protection Act that authorized the incidental take for five years of polar bears and Pacific walrus resulting from oil and gas industry activities in the Beaufort Sea and the adjacent coastal areas.  The plaintiffs also challenged the finding of no significant impact under the National Environmental Policy Act.  This Court granted the motion to transfer stating:

> The present case, at its core, involves the environmental impact of oil and gas industry activities in the Beaufort Sea and adjacent coast of Northern Alaska. Although Plaintiffs' arguments in favor of adjudicating this case in the Northern District of California have some merit, they do not fully offset the countervailing aspects to be considered by the Court such as the fact that none of the operative facts occurred within this district and the challenged FWS decision authorizing the "incidental take" of polar bears and Pacific walrus as part of industrial oil and gas exploration, development, and production activities in Alaska is one in which Alaska and its residents have a great interest.  Plaintiffs are correct that interest in these species transcends state and, indeed, international boundaries, with the bears and walrus also inhabiting Canadian waters and with international attention focused on the polar bears' survival in the face of possibly melting ice.  However, widespread concern does not by itself resolve the question of which of the proposed federal forums is the most appropriate.  Weighing all of the relevant circumstances, the Court concludes that Alaska provides the most appropriate forum.

Kempthorne, 2007 WL 2023515 at *6.

In the present case, as in the 2008 Kempthorne case, local interests in Alaska do not sufficiently favor transfer to outweigh Plaintiffs' choice of forum.  Defendants argue that the ribbon

8

seal is located in the Sea of Okhotsk, the Bering and Chukchi Seas, but that the closest state to the seals' habitat is Alaska, so that state has a local interest in this controversy. The ribbon seal population, however, is pelagic, living in the deep ocean far offshore, and although its sea-ice habitat is closest to Alaska among the states, Plaintiffs pointed out and Defendants did not dispute that the habitat is far offshore and the seals rarely come on Alaskan land, except when sick and dying. Defendants also argue that Alaska has a local interest in this issue because the 12-month finding was largely made in Alaska, and the agency contacts are there. But as Defendants' counsel acknowledged at the hearing, the petition to list the ribbon seal, which was researched in, drafted in and sent from San Francisco by the Center, triggered the status review of the seal and the 12-month finding. Thus, Plaintiffs' activities in San Francisco were integral to the challenged decision. Also, although Defendants argue that Plaintiffs have offices in Alaska, Greenpeace is a California resident and the Center directs its climate and ocean protection efforts primarily from its San Francisco office.

      Defendants also argue that the impact of the listing decision is more likely to affect Alaskans. Unlike this Court's 2007 Kempthorne decision, however, here the challenge is not focused on activities of central local importance to Alaskans -- oil and gas development in Alaska -- except as a minor compounding factor exacerbating the primary issue of global warming melting the far offshore sea-ice. And the focus is not on activities on land in Alaska or near shore waters where Alaskans may interact significantly with the species at issue. Cf. Kempthorne, 2007 WL 2023515 at *6 (stating that Alaska residents have great interest in oil and gas development projects in their state); Sierra Club v. United States Dep't of State, 2009 WL 3112102 at *3 (stating that land is a localized interest); Center for Biological Diversity v. Rural Utilities Serv., 2008 WL 2622868 at *1 (N.D. Cal. June 27, 2008) (noting that the agency action concerned conduct in Kentucky). In the 2007 Kempthorne decision, unlike here, the issue of oil and gas activities on Alaskan coastal lands and waters was the focus because the challenged decision authorized the "incidental take" of polar bears and walrus in the course of these localized economic activities. By contrast, here the primary threat to the species for which protection is sought is global activity causing global warming, while localized economic activity in Alaska is only a peripheral issue along with other activities outside

9

1 Alaska, including the more significant Russian commercial harvest. Nor do Alaskans usually
2 interact with the ribbon seals, which generally remain far out at sea, save for de minimus subsistence
3 harvest by Alaska natives of about twenty seals per year, which subsistence is specifically exempted
4 from the ESA. See 16 U.S.C. § 1539(e)(1). The University of Alaska, Fairbanks, is conducting
5 research on the ribbon seal, which does show some local interest in the ribbon seal, but not enough
6 to outweigh the Plaintiffs' choice of forum and the interests of citizens of other states such as
7 California in the survival of potentially endangered species.

8 Importantly, the primary reason that Plaintiffs seek protection for the ribbon seal is the
9 negative effect of global warming on the seals' habitat, which is not an interest localized in Alaska.
10 See Compl. ¶ 63 (stating that the primary threat to the ribbon seals is the loss of their sea-ice habitat
11 due to global warming). If Plaintiffs were to prevail in reversing NMFS's decision not to list the
12 ribbon seal, the protection of the seals' habitat from global warming would not primarily implicate
13 local interests in Alaska, because global warming, by its nature, is not a local phenomenon, but
14 crosses state and international borders. Indeed, it is difficult to conceive of a less localized issue
15 than global climate change. While Plaintiffs also point to additional reasons to support their
16 petition, the next biggest threat alleged relates to Russia's commercial harvest of ribbon seals (see
17 id.), not activities in Alaska. Plaintiffs also point to the cumulative impact of disease, predation, oil
18 and gas development and increased shipping through the ribbon seals' habitat (see id.), which do in
19 part relate to local interest in Alaska, but are outweighed by the non-Alaskan interests and Plaintiffs'
20 choice of forum. Thus, this case is more like the 2008 Kempthorne case, where transfer was denied,
21 than this Court's 2007 Kempthorne decision. Weighing all of the circumstances, the Court
22 concludes that the local interests of Alaska do not outweigh the deference to be given to Plaintiffs'
23 choice of forum.

24 Other decisions cited by the parties are distinguishable. In Sierra Club v. United States
25 Dep't of State, 2009 WL 3112102 (N.D. Cal. Sept. 23, 2009), the court granted the defendant's
26 motion to transfer the action, which challenged the planned construction and operation of a pipeline
27 through North Dakota, Minnesota and Wisconsin to carry crude oil from Canada to the United
28 States, because Minnesota's strong local interest outweighed the plaintiff's choice of forum.

10

1 Specifically, the agency action involved land whose "'management directly touches local citizens.'"
2 Sierra Club, 2009 WL 3112102 , at *3 (quoting S. Utah Wilderness Alliance v. Norton, 315 F. Supp.
3 2d 82, 88 (D. D.C. 2004)).  Further, the permits for the pipeline were issued after studying the
4 affected locations in Minnesota and Wisconsin, consulting with tribal leaders in those states, and
5 holding public meetings in Minnesota.  See id. at *4.  Also, the construction of the pipeline would
6 have environmental and aesthetic implications for local people, as well as significant economic
7 implications.  See id.  In addition, the plaintiffs' standing declarants resided in Minnesota or
8 Wisconsin and allege injuries related to the construction of the pipeline in those states.  See id.  The
9 Sierra Club court considered the plaintiffs' argument that climate change could result from
10 greenhouse gas emissions from the construction and operation of the pipeline, but concluded that:
11 "Even assuming all of this is true, global warming is only one of the potential environmental effects
12 of this project, and one that is somewhat removed in time.  By contrast, other impacts, including
13 environmental, aesthetic, and economic, will be felt by Minnesotans immediately." Id.; see also,
14 e.g., Rural Utilities Serv., 2008 WL 2622868 at *1 (granting transfer to Eastern District of Kentucky
15 because the challenged agency decision involved new electric generating units and switching
16 stations and an electric transmission line proposed in Kentucky, the public notice and hearings took
17 place in Kentucky and no part of the plaintiff's claims arose in the Northern District of California);
18 McCrary v. Gutierrez, 2006 WL 1748410 at *3 (E.D. Cal. June 23, 2006) (granting transfer to the
19 Northern District of California  because the species that was the subject matter of the action, the
20 alleged injury and the formulation of the basis for the challenged decision occurred in the Northern
21 District); Oregon Natural Resources Council v. Brown, 1997 WL 464826 at *5 (N.D. Cal. July 29,
22 1997) (granting transfer to the District of Oregon because the species was only found there, the plan
23 that could affect the species was state-generated, the determination of the plan's adequacy would be
24 determined there and only the plaintiffs concerned with the status of the species, most of whom
25 resided in Oregon, needed to remain in the case); see also Friends of the Earth v. Watson, C-02-4106
26 JSW (N.D. Cal. Oct. June 30, 2003), rev'd In re Greenpeace, Inc., et al., No. 03-72620 (9th Cir.
27 Sept. 11, 2003) (district court granted the defendant's motion to transfer to the District of Columbia
28 because the operative facts took place there, even though the plaintiffs alleged that the defendants'

actions contributed to global climate change and two cities in the Northern District of California were plaintiffs; the Ninth Circuit disagreed and summarily reversed, citing Decker Coal, 805 F.2d at 843, which stated: "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Here, in contrast to Sierra Club and similar cases showing strong local interests in the transferee districts, the local interests in Alaska are less strong. Land in Alaska is not significantly impacted by the ribbon seal listing decision, the ribbon seals live and breed far out in the deep ocean and do not come ashore in Alaska except when dead or ill, and Alaskans do not harvest the seals except for the tiny, exempt Native Alaskan subsistence harvest. Although the listing decision was made in Alaska, it was set in motion by a petition researched and drafted in the Northern District of California, and there is no evidence that the decision was made in conjunction with public input from Alaskans. Finally, the issue of global warming in this case is the primary threat alleged to the ribbon seal, and is not outweighed by local interests of Alaskans.

Under these circumstances, the localized interests of Alaska do not outweigh the deference accorded to Plaintiffs' choice of forum. Therefore, Defendants' Motion to Transfer is denied.

**IT IS SO ORDERED.**

Dated: November 30, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge