IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY,

    Plaintiff,

  v.

JANE LUBCHENCO,

    Defendants.
_____/

No. 09-04087 EDL

**ORDER GRANTING IN PART AND DENYING IN PART STATE OF ALASKA'S MOTION TO INTERVENE AS DEFENDANT**

Plaintiffs Center for Biological Diversity and Greenpeace, Inc. allege that Defendants Jane Lubchenco, Administrator of the National Oceanic and Atmospheric Administration, the Secretary of Commerce, and the National Marine Fisheries Service (collectively the "Service") failed to comply with the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544 in failing to list the ribbon seal as threatened or endangered. Plaintiffs seek a declaratory judgment that the Service is in violation of ESA and the Administrative Procedures Act, 5 U.S.C. §§ 701-706, and injunctive relief compelling remand of the challenged agency decision. The State of Alaska seeks to intervene as a Defendant pursuant to the Federal Rule of Civil Procedure 24. Plaintiffs oppose Alaska's motion. Defendants did not take a position on Alaska's motion.

On February 9, 2010, the Court held a hearing on Alaska's motion. At the Court's direction, the parties filed supplemental briefs on February 11, 2010 and February 17, 2010. For the reasons stated at the hearing and in this Order, the Court grants Alaska's motion as to the relief phase and denies the motion as to the merits phase but permits Alaska to participate as amicus curiae.

**Intervention as of right**

Federal Rule of Civil Procedure 24(a) provides in relevant part:

On timely motion, the court must permit anyone to intervene who:...(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

An applicant seeking to intervene as of right must show that: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is situated so that the disposition of the action may as a practical matter impair or impede the interest; and (4) the applicant's interest is inadequately represented by the parties. See Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1107 (9th Cir. 2000) (citing Wetlands Action Network v. United States Army Corps of Eng'rs, 222 F.3d 1105, 1113-14 (9th Cir. 2000). Although, as stated at the hearing, Alaska's motion is timely, Alaska has failed to establish the other three requirements for intervention as of right. Therefore, Alaska's motion to intervene pursuant to Rule 24(a) is denied.

**Significant protectable interest**

To determine whether a proposed intervenor has a "significant protectable interest" in an action, the proposed intervenor must show: (1) an interest that is protected under some law; and (2) a "relationship" between its legally protected interest and the plaintiff's claims. See Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998). "No specific legal or equitable interest need be established." Berg, 268 F.3d at 818 (citing Greene v. U.S., 996 F.2d 973, 976 (9th Cir. 1993); see also United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004). An applicant generally satisfies the "relationship requirement only if the resolution of the plaintiff's claims actually will affect the applicant." Donnelly, 159 F.3d at 410. An applicant satisfies the "interest" test when injunctive relief sought by plaintiffs will have a direct, immediate and harmful effect upon the applicant's legal interests. See Forest Conservation Council, 66 F.3d at 1494.

Alaska asserts that it has three main interests: (1) protecting its sovereignty with respect to managing and conserving wildlife and other natural resources within its jurisdiction, including the ribbon seal; (2) protecting its citizens' welfare, especially with respect to managing Alaska's natural

2

1  resources for the maximum benefit of its people; and (3) safeguarding its interest in the national
2  energy policy. Plaintiffs do not dispute that Alaska has these interests, but argue that there is no
3  relationship between these interests and the claims in this case and that the ruling Plaintiffs seek will
4  not directly or immediately harm those interests.

5      Specifically, Plaintiffs contend that Alaska's interest in the management of wildlife is not a
6  significantly protectable interest in this litigation. The issue in this case is whether Defendants made
7  an appropriate listing decision with respect to the ribbon seal, and the only remedies sought are
8  declaratory relief and injunctive relief to remand the decision. Thus, the resolution of Plaintiffs'
9  claims will not actually affect Alaska's interest in the management of its wildlife. See Donnelly,
10  159 F.3d at 410 ("The district court denied intervention . . . an applicant generally satisfies the
11  'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the
12  applicant . . . the motion to intervene was premature and . . . plaintiffs might never obtain any
13  remedy that could effect the proposed intervenors. We affirm instead on the ground that the
14  proposed intervenors lack a 'significant protectable interest' in any of plaintiffs' potential
15  remedies."). Alaska responds that a remand of the listing determination could have an adverse effect
16  on Alaska's interest in management of wildlife because the remand may lead to a decision to list the
17  ribbon seal. Alaska attempts to distinguish Donnelly on the ground that it is an employment
18  discrimination action brought by women seeking, among other things, training and elimination of
19  discriminatory managers - but not affirmative action -- in which male employees were denied
20  intervention because the remedies sought by the plaintiffs could have no effect on them. However,
21  the test for significant protectable interest in Donnelly rests on how the remedy sought may actually
22  affect a proposed intervenor. Id. at 410. An unfavorable outcome in this case would not, as Alaska
23  contends, compel a decision listing the ribbon seal, but rather compel Defendants to the engage in
24  listing procedure again, which would not actually affect Alaska's interest in wildlife. For the same
25  reasons, Alaska's economic interests with respect to citizens' welfare and managing natural
26  resources for the benefit of the citizens are not sufficiently related to the underlying subject matter of
27  the case, which is the appropriateness of Defendants' listing decision.

28      Finally, Alaska's interest related to national energy policy, which includes participating in a

state governor's sub-cabinet that was formed to develop climate change strategy (see Declaration of Douglas Vincent-Lang, ¶ 12), is only indirectly related to this litigation.  Alaska argues that an ultimate listing of the ribbon seal could affect Alaskan regulatory programs which it administers (see Vincent-Lang Decl. ¶ 10), and that an adverse ruling and unjustified listing could affect the State's policies to serve the national economy as an exporter of energy to other states.  However, as described above, Plaintiffs seek only a remand for reconsideration of the listing decision; an ultimate listing decision is not at issue in this case.

Alaska also argues that it does have a significant protectable interest because a judgment that the Service erred in its listing decision changes the status quo from a final determination not to list the species to a situation where listing is again under formal consideration and could ultimately lead to a decision to list the species, triggering ESA's requirements.  Therefore, Alaska argues that it must intervene to provide data and other information relevant to the listing decision.  Although this litigation is a first step in a process that could eventually lead to a change in the final listing decision, any outcome here will not compel a decision listing the ribbon seal.  Further, Alaska's interest in providing data and information to support a decision not to list the ribbon seal is not yet at issue because any potential impact of this litigation is in the uncertain future.  Regardless of the outcome of this litigation, the ribbon seal would not be listed unless and until the petition is reviewed again and there is a different finding that the ribbon seal warrants listing.

In addition, courts have denied intervention as of right to private parties asserting interests in environmental litigation seeking compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370d, based on reasoning that has similar force under ESA.  This Circuit has held that because a private party cannot comply with NEPA, it cannot be a defendant in a NEPA compliance action.  See Churchill County v. Babbitt, 150 F.3d 1072, 1082 (9th Cir. 1998) (holding that the federal government is the only proper defendant in an action to compel compliance with NEPA); see also Wetlands Action Network v. United States Army Corps of Eng'rs, 222 F.3d 1105, 1114 (9th Cir. 2000) (same).  Alaska argues that these cases are distinguishable because they address a private party's attempt to intervene under NEPA.  While the Court appreciates the sovereign dignity of states, which has legal consequences with respect to certain doctrines, such as sovereign

4

immunity, Alaska has not explained how or why its status as a state would exempt it from the reasoning of these environmental cases, which on their face apply equally to states and private parties. Neither states nor private parties can violate statutory duties under environmental laws that apply exclusively to federal agencies. Nor has Alaska pointed to any precedent that draws this distinction based on status as a government entity rather than a private party, as opposed to the nature of the would-be intervenor's interests in the litigation and how directly those interests would be affected.

To the contrary, courts within the Ninth Circuit have extended the reasoning of these NEPA cases to claims brought under ESA and other environmental statutes, and to both public and private parties seeking to intervene. See Southwest Center for Biological Diversity v. U.S. Forest Service, 82 F. Supp. 2d 1070, 1074 (D. Ariz. 2000) (extending rule to ESA where, as with NEPA, federal agency is also required to perform an analysis of the environmental impact); see also Center for Food Safety v. Connor, 2008 U.S. Dist. LEXIS 65867 (N.D. Cal. Aug. 15, 2008) (applying the rule that only the federal government could be a defendant in a NEPA case to a case arising under the Plant Protection Act: "Because only the government can comply with the PPA, the Proposed Intervenors do not have a significant protectable interest in the merits phase of this environmental compliance action."). In Southwest Center, the court denied intervention by a private party as to the merits phase of the case because the plaintiffs only challenged the Forest Service's actions and only the Forest Service could comply with the duty to consult regarding the issuance of certain grazing permits required by Section 7, which was the main issue in the case, so only the Forest Service could and should be a defendant in the liability phase. The court rejected the proposed intervenors' argument that cases denying intervention in NEPA actions were inapposite in a case under ESA, noting that under both Acts, federal agencies are required to perform an analysis of the environmental impact of proposed actions. The court noted that some ESA provisions such as the prohibition on "taking" of listed species under Section 9, potentially subject all persons, not just the federal government, to liability. However, the Southwest Center court noted that the plaintiff there only contended that the Forest Service violated Section 9, and did not claim any violation by a private party. Here, Plaintiffs' sole claim is that Defendants acted unlawfully in making their listing

5

determination under Section 4 of ESA, a provision that does not even apply to the activities of private parties.

Silver v. Babbitt, 166 F.R.D. 418, 428 (D. Ariz. 1994) is particularly on point. There, the plaintiffs challenged the Fish and Wildlife Service's designation of critical habitat for the Mexican spotted owl under ESA. Because Defendants essentially admitted a violation, the only issue was re-designation of the critical habitat. The court denied intervention by both a county of the state and a private party, because those entities would have the opportunity to participate in the administrative process once the federal government designated critical habitat for the Mexican spotted owl. The court noted that the private party's interest was too indirect because no critical habitat had yet been designated:

> No potential habitat has been identified. At this time, the interest is too indirect to support intervention as of right into this action. Like the ManaSota court, the Ninth Circuit only grants intervention as of right where litigation will have a direct effect on the applicant's alleged interest. See e.g. Sierra Club v. EPA, 995 F.2d 1478. As in ManaSota, any impact on logging activities depends on several post-litigation actions by a federal agency. An interest which is contingent upon the occurrence of a train of subsequent events will not support intervention

Silver, 166 F.R.D. at 427. Further, the Court determined that the state agency's interest in trust lands was not ripe because the habitat had not yet been designated, that the state agency did not have an interest because the designation of habitat was a federal duty, and that the state agency's fire protection policies were not yet implicated, even though the state had public lands in trust which would later be affected. See Silver, 166 F.R.D. at 431-432. The court noted that the only issue in the case was when the federal government would designate critical habitat, not whether any specific habitat would be designated.

Similarly, here, the question is whether Defendants complied with ESA provisions governing the listing decision process, not whether the ribbon seal should be listed. In Silver, the proposed intervenors' interest was even more closely related to the plaintiffs' claims because a listing decision had already been made; the only issue was the critical habitat to be designated. Here, Alaska's interest is even more attenuated, because even if Plaintiffs prevail, the process of deciding whether to list the ribbon seal will begin again, and may not lead to its listing, and only if it is listed will the issue of critical habitat arise.

6

1    Alaska contends that this case not only challenges the procedural requirements of ESA, but
2 also has substantive implications, citing Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1398
3 n.3 (9th Cir. 1995). In Idaho Farm Bureau, however, the plaintiff challenged both the substantive
4 listing rule and the procedures that the government agency followed. Unlike the agency decision not
5 to list the ribbon seal here, which is challenged on procedural grounds, the final rule listing the
6 Springs Snail as endangered was set aside by the district court in Idaho Farm Bureau, thereby
7 removing ESA protections that were already in place for a species and directly harming the proposed
8 intervenor's interests.

9    Alaska points to certain ESA cases in which courts have allowed parties to intervene as
10 defendants. See Southwest Center for Biological Diversity v. Berg, 268 F.3d at 818-822; Fund for
11 Animals v Norton, 322 F.3d 728, 734 (D.C. Cir. 2003). These cases, however, are inapposite. In
12 both cases, the intervenors were more directly affected by the litigation. In Berg, the plaintiffs
13 challenged the formation, approval and implementation of a land management plan, as to which the
14 intervenors were third party beneficiaries. The court allowed the third party beneficiaries, private
15 parties which were engaged in projects that had already been approved under conservation plans and
16 which held incidental take permits previously issued under ESA, to intervene as defendants. The
17 permits or plans that had already been obtained by the proposed intervenors would have been
18 revoked if the plaintiffs prevailed.

19    In Fund for Animals, the court allowed the Ministry of Nature and Environment of Mongolia
20 to intervene as of right because it had an interest relating to the action as the agency responsible for
21 implementing the country's tourist hunting program, where the plaintiffs not only sought listing of a
22 particular sheep as endangered in Mongolia, but also to cancel existing permits to import trophies as
23 well as to issue a ban on new permits. Thus, the intervenor's interests were more immediately
24 affected than Alaska's would be here. Moreover, Fund for Animals was decided by the District of
25 Columbia Circuit, which does not follow the Ninth Circuit's reasoning that the federal government
26 is the only proper defendant in NEPA cases, so intervention by others as defendants is improper.
27 See Friends of Animals v. Kempthorne, 452 F. Supp. 2d 64, 69 (D. D.C. 2006) ("Plaintiff relies
28 entirely upon Ninth Circuit precedent in support of its contention that proposed intervenors have no

7

interest in the property or transaction which is the subject of this action since 'only the Secretary can comply'" with the applicable environmental and administrative statutes.  However, the District of Columbia Circuit has not imposed so restrictive a standard for the demonstration of an 'interest' in the litigation as Plaintiff suggests. Rather, the District of Columbia Circuit has held that proposed intervenors of right 'need only an "interest" in the litigation-not a "cause of action or permission to sue."'").

Although Alaska has certainly raised legitimate interests, it has not established the close relationship between those interests and the claims at issue that is required for intervention as of right under Ninth Circuit precedent.  Even if Plaintiffs obtain the ruling they seek here, which is not a foregone conclusion, a remand would only compel Defendants to re-analyze the listing decision. The actual decision that might -- or might not -- adversely affect Alaska's interest would occur only after the Service completed another listing process, a process in which Alaska would be able to participate as provided in ESA.  Thus, even though Alaska argues that listing the ribbon seal could affect its management activities depending on a chain of contingent events in the future, Alaska does not have a significant protectable interest in the present litigation as defined by relevant circuit precedent.

**Impair or impede the interest**

Even assuming that Alaska had a significant protectable interest, for the same reasons set forth above, disposition of this case would not as a practical matter impair or impede that interest. Intervention is proper only if the disposition of the action would, as a practical matter, impair or impede Alaska's ability to protect that interest.  See Alisal, 370 F.3d at 919.  Intervention as of right should be denied where the outcome would have "no immediate or any foreseeable, demonstrable effect upon the proposed intervenors."  State of Montana v. United States Environmental Protection Agency, 137 F. 3d 1135, 1141 (9th Cir. 1998).

Plaintiffs here seek declaratory and injunctive relief compelling remand of the petition for listing.  Alaska contends that if the ribbon seal is listed, a critical habitat would then be designated for the ribbon seal as part of the ESA listing process and could affect state lands and waters and the management of those resources.  See 16 U.S.C. § 1533(a)(3)(A).  However, the outcome of this

8

litigation is not the listing of the ribbon seal, but rather a new administrative process regarding Plaintiffs' petition for listing. If Plaintiffs receive a favorable judgment in this case, and the Service must reconsider its findings, Alaska will have the opportunity to protect its interests through the ESA listing process. See 16 U.S.C. § 1535(a) ("In carrying out the program authorized by this chapter, the Secretary shall cooperate to the maximum extent practicable with the States. Such cooperation shall include consultation with the States concerned before acquiring any land or water, or interest therein, for the purpose of conserving any endangered species or threatened species.").

Alaska also argues that the potential precedential effects of the ruling in this lawsuit are sufficient impairment of interests to support intervention as of right. See Sierra Club v. EPA, 995 F.2d at 1478 (reversing denial of motion to intervene and finding that the relief sought would necessarily result in practical impairment of the proposed intervenor's interest in certain permits because even if the proposed intervenor could bring a subsequent lawsuit, the lawsuit would be constrained by stare decisis); see also Forest Conservation Council, 66 F.3d at 1498 (granting intervention because otherwise the proposed intervenor's interest would be practically impaired where the proposed intervenors would have no other means to challenge the proposed injunction). However, the relief sought in Sierra Club would have required the Environmental Protection Agency to change the terms of permits already issued to a city where the city owned the affected wastewater treatment plants as well as the permits in question. See Sierra Club, 995 F.2d at 1480, 1482. Alaska has no such permits here. Similarly, the relief requested in Forest Conservation Council was an injunction prohibiting the Forest Service from "allowing, permitting, authorizing or taking any action in connection with the sale of timber and any other decisions in Northern Goshawk habitat until it complies with the requirements of [NEPA] and [NFMA]," that would have directly and adversely impacted revenues from timber sales, among other things. Forest Conservation Council, 66 F.3d at 1492. By contrast, Plaintiffs here do not seek to halt any activities in Alaska pending compliance with ESA. Unlike Alaska, the proposed intervenors in Sierra Club and Forest Conservation Council had interests that could be more immediately impaired by the outcomes of those suits.

Alaska's concern that a decision setting aside the 12-month finding and requiring

9

reconsideration of the listing determination increases the likelihood that the ribbon seal will ultimately be listed is too remote. Restarting the listing consideration would not result in cancellation of any permits held by Alaska or suspension of logging or other activities pending a decision. Accordingly, the disposition of this case would not as a practical matter impair or impede Alaska's interests.

**Inadequate representation**

In determining whether an applicant's interest is adequately represented by the parties, courts consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

Arakaki v. Cateyeno, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting California v. Tahoe Regional Planning Agency, 792 F.2d 775, 778 (9th Cir. 1986)). The prospective intervenor bears the burden of showing that the existing parties may not adequately represent its interests, but the showing is "minimal" and the applicant need only show that representation of its interests "may be" inadequate. Southwest Center for Biological Diversity, 268 F. 3d at 822-23; see also Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). Where an applicant and existing party "have the same ultimate objective, a presumption of adequacy of representation arises." Southwest Center, 268 F.3d at 923; Arakaki, 324 F.3d at 1086. Further:

> The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties. 7C Wright, Miller & Kane, § 1909, at 318 (1986). When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. League of United Latin Am. Citizens, 131 F.3d at 1305. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation. 7C Wright, Miller & Kane, § 1909, at 318-19.

Arakaki, 324 F.3d at 1086. In Arakaki, the court denied intervention as of right because the proposed private party intervenors had not made a compelling showing to demonstrate inadequate representation where the state defendants had agreed to make all arguments necessary to defend the benefits of the private party intervenors, and another intervenor stated that it would raise the

10

United States District Court
For the Northern District of California

proposed intervenors' arguments.  See also Oregon Natural Desert Ass'n v. Lohn, 2006 WL 3762119, at *3 (D. Or. Dec. 20, 2006) (stating presumption from Arakaki and finding in that ESA case that the proposed private party intervenors in that case had not met the compelling showing required because they gave no reason to believe that the government would not work hard to defend their interests); but see Berg, 268 F.3d at 823 (acknowledging the presumption later set forth in Arakaki, and stating that even if the presumption applied, it was rebutted because the entities had different interests, and the city defendant acknowledged that it would not represent proposed intervenor's interest).

     Here, Alaska and Defendants have the same ultimate objective, that is, to have the agency's listing decision upheld.  Therefore, there is a presumption of adequacy, that can be rebutted by a compelling showing.  Although Alaska argues that if it is permitted to intervene, it will present different information, such as "data on oil and gas exploration and development in the Arctic, and information on the biology of ice seals and the regulatory mechanisms in place to protect the ribbon seal population," than that presented by Defendants, there has been no showing that Defendants cannot or will not argue that data.  Further, the Court will permit Alaska to serve as amicus curiae. See NGV Gaming, Ltd. v. Upstream Pont Molate, LLC, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) ("District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'") (citation omitted).  Moreover, Alaska's additional information would likely be more meaningfully presented to the Service if the listing decision is remanded, and Alaska has provided no reason why it could not do so.  Alaska states that it may take different positions regarding the merits, remedy and settlement, but has not committed to doing so.

     Alaska argues that Congress recognized potentially divergent interests of states and the federal government on ESA matters because Congress has encouraged states to develop and maintain conservation programs under ESA (see 16 U.S.C. § 1531(a)), and because government agencies must invite commentary on proposed regulations from states in which the species is believed to exist (see 15 § 1533(b)(5)(A)).  These statutes, however, apply to listing procedures,

11

1  which would not be implicated unless and until Plaintiffs succeed in this litigation.  The outcome of
2  this litigation will not prevent Alaska from representing itself in the listing process should the court
3  remand the listing decision.  Because Alaska and Defendants have the same ultimate objective in
4  this litigation, there is a presumption of adequacy, and it does not appear that Alaska has made a
5  compelling showing to demonstrate inadequate representation.  More importantly, as set forth above,
6  Alaska has not met the other criteria for intervention as of right.

**Permissive intervention**

Federal Rule of Civil Procedure 24(b) provides:

> On timely motion, the court may permit anyone to intervene who...(B) has a claim or defense that shares with the main action a common question of law or fact...(3) In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(2).  As stated above, Alaska's motion is timely.  However, as described below, the Court denies permissive intervention as to the merits, although it allows permissive intervention as to remedy.

Here, the only issue in the merits phase of this case is whether the government complied with its statutory duties in making its ESA finding.  Alaska shares the same legal position as Defendants on that issue because Alaska would defend the Service, just as the Defendants are, by asserting that the Service followed ESA procedures and policies in reaching its finding that the ribbon seal did not warrant listing.  Further, Alaska contends that it asserts defenses directly responsive to the plaintiff's claims.  See Kootenai, 313 F.3d at 1110-11 (" Moreover, though intervenors do not have a direct interest in the government rulemaking, they have asserted an interest in the use and enjoyment of roadless lands, and in the conservation of roadless lands, in the national forest lands subject to the Roadless Rule, and they assert "'defenses'" of the government rulemaking that squarely respond to the challenges made by plaintiffs in the main action.").

However, even though Alaska shares a common question of fact or law with this case, the issues raised by Alaska regarding its interests relative to the listing decision may only complicate the question of whether Defendants complied with ESA.  See Friends of the Wild Swan v. US Fish & Wildlife Serv., 896 F. Supp. 1025, 1028 (D. Or. 1995) (denying permissive intervention to

landowners, timber companies and sport fisherman guide because the interjection of the intervenors' interests in the case would confuse the issues). Alaska argued at the hearing, without pointing to specific evidence, that it has provided vast amounts of information in the administrative record that it would like to explain or emphasize. Further, the federal government noted at the hearing on this motion that Alaska has indicated that its interests may not be aligned with the Forest Service's insofar as the Alaska Attorney General has stated that the ribbon seal listing decision is a rejection of the reasoning in an earlier decision regarding the listing of a different species, the polar bear, a statement with which Defendants disagree. Thus, intervention in the merits phase could cause delay and inject new issues into the proceedings.

Plaintiffs are correct that Alaska has not pointed to any independent jurisdictional basis for its intervention, and numerous Ninth Circuit cases state that one is required for permissive intervention, although Alaska argues to the contrary. See Donnelly, 159 F.3d at 412 (stating that a proposed intervenor must show that: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims) (citing Northwest Forest Res. Council, 82 F.3d 825, 839) (stating the rule, and finding that private entity could not permissively intervene as a defendant because it could not assert a basis for jurisdiction: "Because Section 2001(k)(1) contains a mandate to the Secretaries to release certain timber sales, and admits of no limitations posed by other laws, it appears that ONRC cannot allege grounds for jurisdiction.")). However, the caselaw is not entirely uniform as to whether an independent jurisdictional basis is an absolute requirement for permissive intervention. On the one hand, Donnelly appears to state that it is, and several cases have cited Ninth Circuit precedent requiring an independent jurisdictional basis. See Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 955 (9th Cir. 2009) (stating the Donnelly rule, but not applying the jurisdictional prong); Garza v. County of Los Angeles, 918 F.2d 763, 777 (9th Cir. 1990) (stating that permissive intervention is allowed when the "intervenor raises a claim that has questions of law or fact in common with the main case, shows independent grounds for jurisdiction, and moves to intervene in a timely fashion."); Center for Food Safety v. Connor, 2008 U.S. Dist. LEXIS 65867, *9 (N.D. Cal. Aug. 15, 2008) (citing the Donnelly rule, but not addressing the independent jurisdictional basis);

13

1  Oregon Natural Desert Ass'n v. Shuford, 2006 U.S. Dist. LEXIS 64452, at *14 (D. Or. Sept. 8,
2  2006) (stating without analysis that there was no independent basis for jurisdiction for the county
3  defendant intervenor); League of Wilderness Defenders v. Forsgren, 184 F. Supp. 2d 158, 1060-61
4  (D. Or. Jan. 30, 2002) (stating the rule and holding that the defendant intervenor could not meet the
5  independent jurisdictional basis because only the Forest Service could be held liable under NEPA);
6  Silver v. Babbitt, 166 F.R.D.418, 434 (D. Ariz.1994) (citing the need for and lack in that case of an
7  independent jurisdictional basis for both permissive intervention in the first instance and also for any
8  new claims).

9       On the other hand, there is some support for the argument that the need for an independent
10  jurisdictional basis may not arise as to all potential permissive intervenors. In Kootenai Tribe of
11  Idaho v. Veneman, 313 F.3d 1094 (9th Cir. 2002), the court stated that permissive intervention
12  generally only requires a common question of law or fact between the proposed intervenor's claim
13  and the main action, but explained that "in *this unusual context* [where only the intervenors
14  appealed], our precedent requires that we find independent jurisdictional grounds for the defendant-
15  intervenors' appeal." Kootenai, 313 F.3d at 1109 (emphasis added) (quoting Didrickson v. United
16  States Dep't of the Interior, 982 F.2d 1332, 1337-38 (9th Cir. 1992): "'An interest strong enough to
17  permit intervention is not necessarily a sufficient basis to pursue an appeal abandoned by the other
18  parties.'"). In Kootenai, no party appealed the district court's decision, so the court required that the
19  proposed intervenors on appeal show an independent jurisdictional basis for their claims. Here, by
20  contrast, those unusual circumstances are not present. The Kootenai court indicated that in the more
21  typical context where an entity seeks to intervene at the district court level, once a common question
22  of law or fact is established, the trial court has discretion whether to allow permissive intervention,
23  although it did not address the seemingly contrary statements in the Donnelly line of cases. Id. at
24  1111; see also 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
25  Procedure § 1911 (3d ed. 2007) (cautioning against requiring a finding of independent jurisdictional
26  basis for permissive intervention: "Close scrutiny of the kind of interest the intervenor is thought to
27  have seems especially inappropriate under Rule 24 since it makes no mention of interest. The rule
28  requires only that the intervenor's claim or defense share a common question of law or fact with the

14

main action."); id. at § 1917 (". . . the need for independent jurisdictional grounds is almost entirely a problem of diversity litigation. In federal-question cases, there should be no problem of jurisdiction with regard to an intervening defendant . . . . ").

Even assuming that Alaska has shown a common question of fact or law and that it need not establish an independent jurisdictional basis, the Court declines to exercise its discretion to allow permissive intervention in the merits phase because it would not facilitate resolution of the merits of the sole issue: whether Defendants have complied with their exclusive obligations under ESA. The Court welcomes Alaska's participation as amicus curiae in the merits phase, however. Further, it appears at this stage that if Plaintiffs prevail on the merits, the sole relief they can and will seek is a remand to the Service to re-commence the listing proceedings, so it is not clear what, if anything, Alaska could add to any decision on remedy. However, in an abundance of caution, the Court grants permissive intervention as to the remedy phase of the litigation, if any, as some prior cases have allowed.

Accordingly, Alaska's motion to intervene pursuant to Rule 24(b) is granted as to the remedy phase and is denied as to the merits phase. Alaska may participate as amicus curiae in the merits phase of this case.

**IT IS SO ORDERED.**

Dated: March 19, 2010

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge